IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| RICHARD RAUGUST,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF MONTANA; COUNTY OF SANDERS; WAYNE ABBEY, individually and in his official capacity; GENE ARNOLD, individually and in his official capacity; ESTATE OF PERRY MOCK, individually and in his official capacity; and JOHN DOE DEFENDANTS 1-50,<br><br>Defendants. | CV 20-9-H-CCL<br><br><br>ORDER |

Defendant State of Montana (the State) moves to dismiss Plaintiff Richard Raugust's complaint against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Richard Raugust (Raugust) moves for leave to file a sur-reply brief addressing the public duty doctrine defense raised for the first time by the State in its reply brief. The Court has determined that the State's motion can be decided without relying on the public duty doctrine, obviating any need for a sur-reply brief on this issue.

## LEGAL STANDARD

When determining a motion to dismiss under Rule 12(b)(6), this Court accepts all factual allegations and reasonable inferences as true and construes them in the light most favorable to the nonmoving party, but does not consider conclusory allegations of law and unwarranted inferences. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.2004) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001)). To survive a 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts to state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.1993) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980)). Although this case was removed to federal court based on the constitutional issue raised in Count 4 of the complaint, the Court has supplemental jurisdiction over Plaintiff's state law claims and applies state law to those claims, just as it would were its jurisdiction based on diversity. *Media Rights Technologies v. Microsoft Corp.*, 922 F.3d 1014, 1026 (9th Cir. 2019).

"In dismissing for failure to state a claim, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)(quoting *Cook, Perkisss & Liehe v. N. Cal. Collection Service*, 911 F.2d 242, 247 (9th Cir. 1990)). In other words, a Court can "deny leave to amend when any proposed amendment would be futile." *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990).

## DISCUSSION

The Court begins its analysis by reviewing those paragraphs of the complaint containing allegations directed at the State. According to ¶ 2 of the complaint "Defendant State of Montana is a government entity responsible for overseeing all law enforcement and criminal justice in the State." The paragraph goes on to quote a Montana statute granting the State's attorney general the power

> to exercise supervisory powers over county attorneys in all matters pertaining to the duties of their offices and from time to time require of them reports as to the condition of public business entrusted to their charge. The supervisory powers granted to the attorney general by this subsection include the power to order and direct county attorneys in all matters pertaining to the duties of their office. The county attorney shall, when ordered or directed by the attorney general, promptly institute and diligently prosecute in the proper court and in the name of the state of Montana any criminal or civil action or special proceeding.

Mont. Code Ann. § 2-15-501(5).

The quoted paragraph does not support Plaintiff's claim that the State is responsible for overseeing all law enforcement in the State. It grants the State's attorney general the power to supervise county attorneys, not county sheriffs or other law enforcement officers employed by the county.

In ¶ 7 of the complaint, Plaintiff alleges that "the individual Defendants named above committed the acts alleged herein as members, agents and employees of the State of Montana, . . . ." None of the individual defendants named in the complaint are agents or employees of the State.

The complaint contains a number of references to the State's prosecution of Raugust. *See* ¶¶ 41, 43, 48, 49, 51, 52, and 53. These references are not relevant to the issue before the Court because Raugust has conceded that the State is entitled to prosecutorial immunity for any conduct relating to its prosecution of Raugust. Paragraph 59 of the complaint alleges that the "State of Montana and County of Sanders failed to properly train and supervise Sheriff Arnold, Deputy Mock and others involved in the investigation and prosecution of this crime." Given Plaintiff's concession as to prosecutorial immunity, the Court only considers the portion of this paragraph that asserts the State failed to properly train and supervise the investigation of the crime that led to Raugust's murder conviction.

Plaintiff's claims against the State are premised solely on the theory that the State had a duty to train and supervise the county officials that investigated the crime that led to his conviction and incarceration. In his response to the State's motion to dismiss, Plaintiff attempts to buttress this theory by citing a number of Montana statutes found in Title 44 of the Montana code.

Plaintiff first cites three statutes found in Chapter 4 of Title 44. The first statute cited, Mont. Code Ann. § 44-4-101 (2019)[1], does not support Plaintiff's argument as it establishes a training coordinator position to train county attorneys, not county law enforcement agents. The two other statutes cited involve the State's law enforcement academy, which is governed by the State's Department of Justice. Mont. Code Ann. § 44-10-201. While the Department of Justice is responsible for the conduct of individuals employed by county and local governments while enrolled at the academy, Mont. Code Ann. § 44-10-202(g), it has no duty to supervise those individuals once they leave the academy.

The fact that the individuals who allegedly caused Plaintiff's wrongful incarceration likely attended the academy is not a basis for holding the State liable. The statutes cited by Plaintiff do not establish the State's duty to train every law enforcement officer in Montana. Montana law imposes the duty to ensure that

---

[1] Citations to Montana Code Ann. refer to the 2019 edition, unless otherwise noted.

Page 5 of 13

deputy sheriffs attend the law enforcement academy on county sheriffs, not the State. Mont. Code Ann. § 7-32-2106. Nor is the State liable for the conduct of every law enforcement officer trained at the academy.

Plaintiff next cites two statutes found in Chapter 13 of Title 44. Chapter 13 creates a special law enforcement assistance account, Mont. Code Ann. § 44-13-101, to receive property and money forfeited under federal law to the State. Mont. Code Ann. § 44-13-102. Plaintiff appears to argue that these statutes impose a duty on the State to fund local law enforcement agencies and the State's failure to fund Sanders County caused the allegedly negligent investigation that led to Raugust's murder conviction.

Section 44-13-103 states that the "attorney general may" use the funds in the special law enforcement account for a number of permissible purposes. Mont. Code Ann. § 44-13-103. It does not require the State to use the funds for any particular purpose. "By using 'may' in these statutes, the Legislature has provided the DOJ discretionary authority to act or decline to act." *Sikorski v. Johnson*, 143 P.3d 161, 167 (Mont. 2006). These statutes do not create a duty on the part of the State and do not provide a basis for liability.

Plaintiff next cites two statutes found in Chapter 3 of Title 44. The first section cited defines the term agent, Mont. Code Ann. § 44-2-111, and the second

sets forth the powers and duties of agents. Mont. Code Ann. § 44-2-115. To qualify as a law enforcement agent for the State, an individual must be appointed by the attorney general. Mont. Code Ann. § 44-2-111. Plaintiff does not allege that any of the law enforcement officers individually named in his complaint were appointed by the attorney general. They therefore do not qualify as agents of the State. These statutes do not give rise to a duty on the part of the State to supervise investigations undertaken by county law enforcement officials.

Plaintiff seeks to hold the State liable under a respondeat superior theory. The "common law doctrine of respondeat superior imposes vicarious liability on employers for the tortious conduct of employees committed while acting within the scope of their employment." *Brenden v. Billings*, 2020 MT 72, ¶ 13 (Mont. 2020). The State did not employ any of the individually named defendants whose allegedly wrongful conduct led to Plaintiff's murder conviction and thus cannot be held liable under the respondeat superior theory.

The State also argues that all of Plaintiff's claims against it are barred by the three-year statute of limitations because his complaint was not filed until December 24, 2019, and his limitation period as to his state law claims began to run when he discovered that he had been wrongfully convicted. The State cites *Ereth v. Cascade County*, 81 P.3d 463 (Mont. 2003), to support its argument that

Plaintiff was required to file his state law claims when he knew or should have known that he had the claims rather than waiting until his conviction was invalidated. (Doc. 11 at 7). Alternatively, the State argues that Plaintiff's limitations period began to run on November 16, 2015, when his conviction was reversed. (Doc. 11 at 8).

Plaintiff agrees that Montana's three-year statute of limitations applies to his claims, but argues that he timely filed his complaint. He first argues that the accrual date for both his state law claims and his federal law claim is governed by federal law. (Doc. 20 at 10). He then argues that under federal law, his claims did not accrue until his criminal conviction was exonerated, which did not occur until the criminal case against him was dismissed on September 9, 2016. (Doc. 20 at 10 - 13). He then relies on state law to justify his waiting until December of 2019 to file his complaint, arguing that the limitations period was tolled for 120 days by Mont. Code Ann. § 2-9-301. (Doc. 20 at 13 - 14).

The cases cited by Plaintiff to support his argument that the accrual date of his claims is governed by federal law are all cases involving claims arising under 42 U.S.C. § 1983, a federal statute. Plaintiff is correct that the accrual date of his § 1983 claim is governed by federal law. In *Heck v. Humphrey*, the United States Supreme Court held that a state prisoner could not seek damages under § 1983 for

an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" without first proving "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorize to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S., 477, 486 - 487 (1994).

The Court need not consider the statute of limitations defense as to Plaintiff's § 1983 claim against the State because the State is not a "person" that can be sued for money damages under 42 U.S.C. § 1983 . *Will v. Michigan*, 491 U.S. 58, 71 (1989).

The Court applies state law to Plaintiff's supplemental state law claims, just as it would were its jurisdiction based on diversity. *Media Rights Technologies*, 922 F.3d at 1026. The Court therefore applies state law to determine when Plaintiff's state law claims accrued. *Bott v. Edelson*, 771 Fed. Appx. 400, 401 (9th Cir. 2019).

In *Ereth*, the Montana Supreme Court rejected a plaintiff's argument that her malpractice claim against the attorney who represented her in a criminal case "did not begin to run until she obtained relief from her criminal conviction." *Ereth*, 81 P.3d at 466. ¶ 14. Because the issue "whether the statute of limitations for legal

malpractice should be tolled for the criminal defendant while he or she pursues a claim for postconviction relief or whether he or she should pursue a claim for legal malpractice simultaneously with the claim for postconviction relief" was one of first impression, the Montana Supreme Court looked to case law from other jurisdictions to decide the issue. *Id.* at ¶¶ 18 - 19.

Other jurisdictions were divided on the issue, many following the "one-track" approach applied by the United States Supreme Court in *Heck*. *Ereth*, 81 P.3d at 469, ¶ 25. While recognizing that it was required to follow the "one-track" approach when deciding a § 1983 case, *id.*, the Montana Supreme Court chose to follow those circuits that applied the "two-track" approach, noting that "it is not unusual for a party to have both a criminal matter pending before a court, and a related civil suit arising out of that criminal matter also pending." *Id.* at ¶ 24 (citing *Gebhardt v. O'Rourke* 537 P.2d 863 (Mich. 1994). The Montana Supreme Court was persuaded to adopt the "two-track" approach followed by the Michigan Supreme Court in *Gebhardt* "because it incorporates a strict reading of the statute of limitations that at the same time addresses the problems posed by multiple litigations" and held that the statute of limitations on malpractice claims arising from criminal litigation begins to run when the criminal defendant discovers the wrongful act. *Ereth*, 81 P.3d at 469, ¶ 26.

Although the *Ereth* holding specifically applies to malpractice claims, the underlying policy reasons for adopting the two-track approach apply to Plaintiff's claims for negligence (Count 1), negligence *per se* (Count 2), negligent hiring and supervision (Count 3), violation of the Montana constitution (Count 5) and infliction of emotional distress. (Count 6). The only issue to be decided at this point, therefore, is when Raugust discovered his state law claims. Raugust admits that by August of 2013 he had learned that the State failed to provide certain information to his defense counsel before the 1997 trial which resulted in his conviction. (Doc. 3 at ¶¶ 20 and 38). The statute of limitations on Raugust's state law claims therefore began to run in August of 2013.

Plaintiff correctly points out that the statute of limitations for claims against the State of Montana is tolled for 120 days from the date a claim is presented to the State. Mont. Code Ann. § 2-9-301. The tolling period is triggered on the day the Department of Administration for the State of Montana receives the claim. *Wing v. State*, 155 P.3d 1224, 1228 ¶ 428 (Mont. 2007). Raugust admits in his response to the State's motion that the State did not receive his claim until May 16, 2019 (Doc. 20 at 14), which was well after the statute of limitations had run. Raugust's state law claims against the State of Montana are barred by the statute of limitations, which could not be extended by the untimely filing of a claim.

Plaintiff has conceded that the actions taken by the prosecutor in this case are entitled to prosecutorial immunity. "Prosecutorial immunity is an established immunity from civil liability" which "extends to the State of Montana." *Renenger v. Montana*, 426 P.3d 559, 564 (Mont. 2018). The State therefore cannot be held liable for either the federal law claim against it or any of the state law claims, to the extent that those claims are based on the conduct of the prosecutor.

## CONCLUSION & ORDER

As explained above, the State cannot be held liable for the conduct of the county law enforcement officers under either the statutes cited by Plaintiff or the common law doctrine of respondeat superior. The only state agents involved in the prosecution of the criminal case against Raugust were acting in a prosecutorial capacity and their conduct is entitled to prosecutorial immunity. Plaintiff cannot seek money damages from the State under § 1983, and his state law claims are barred by the statute of limitations. Based on its review of the applicable law, the Court has determined that Plaintiff can plead no facts sufficient to give rise to liability on the part of the State of Montana. Accordingly,

**IT IS HEREBY ORDERED** that the State's motion to dismiss (Doc. 10) is GRANTED. Plaintiff's complaint against the State is DISMISSED with prejudice.

///

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to file a sur-reply (Doc. 23) to address the State's public duty doctrine defense is DENIED, as the Court did not consider the public duty doctrine in making its decision.

DATED this 29th day of June, 2020.

*/s/ Charles C. Lovell*
Charles C. Lovell
Senior United States District Judge