+

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| RICHARD RAUGUST, | CV 20-9-H-CCL |
| Plaintiff, | |
| v. | OPINION & ORDER |
| STATE OF MONTANA; COUNTY OF SANDERS; WAYNE ABBEY, individually and in his official capacity; GENE ARNOLD, individually and in his official capacity; ESTATE OF PERRY MOCK, individually and in his official capacity; and JOHN DOE DEFENDANTS 1-50, | |
| Defendants. | |

Defendants Sanders County, Wayne Abbey, Gene Arnold and Estate of Perry Mock (collectively County Defendants) move to dismiss Plaintiff Richard Raugust's complaint against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff opposes the motion, which is now fully briefed and ready for ruling.

**LEGAL STANDARD**

When determining a motion to dismiss under Rule 12(b)(6), this Court accepts all factual allegations and reasonable inferences as true and construes them in the light most favorable to the nonmoving party, but does not consider

conclusory allegations of law and unwarranted inferences. *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.2004) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001)). To survive a 12(b)(6) motion to dismiss, a plaintiff must allege sufficient facts to state a "claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a court is generally limited to considering the contents of the complaint when deciding a Rule 12(b)(6) motion, a court may look beyond the complaint to documents incorporated by reference in the complaint and documents subject to judicial notice under Fed. R. Evid. 201. *Khoja v. Orexigen Therapeutics,* 899 F.3d 988, 998 (9th Cir. 2018).

"When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.1993) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980)).

Although this case was removed to federal court based on the constitutional issue raised in Count 4 of the complaint, the Court has supplemental jurisdiction over Plaintiff's state law claims and applies state law to those claims, just as it

would were its jurisdiction based on diversity.  *Media Rights Technologies v. Microsoft Corp.*, 922 F.3d 1014, 1026 (9th Cir. 2019).

**PROCEDURAL BACKGROUND**

Plaintiff filed his complaint against the State of Montana and the County Defendants on December 24, 2019.  (Doc. 3).  Each of the individually named County Defendants are named in both their individual and official capacities.  In its caption, Plaintiff refers to up to 50 "John Doe Defendants" who he "believes . . . may have been agents of, employers of, employees of franchisers or franchisees of, or contractually obligated to the named Defendants or are in privy with the named Defendants" and "may have committed one or more of the acts set out herein. . . ." (Doc. 3 at ¶ 8).  Plaintiff's complaint attempts to state six separate claims against "Defendants," a term the Court presumes is meant to include the State, the County Defendants, and the John Doe Defendants.  Five of those claims arise under state law and one (Count 4) under federal law, specifically 42 U.S.C. § 1983.

Plaintiff is a citizen of California and the County Defendants are all citizens of Montana.  The County Defendants removed the case to federal court on February 4, 2020, on the basis of both diversity jurisdiction and federal question jurisdiction.  The state court record was filed on February 13, 2020, and it does not appear that the State had been served as of that date.  (*See* Doc. 2-1 at 35 - 37)

The County Defendants filed their motion to dismiss and supporting brief on February 21, 2020.  The State appeared and filed its motion to dismiss and supporting brief on March 25, 2020.  The Court granted the State's motion and dismissed the case against the State with prejudice on June 29, 2020.

**FACTUAL BACKGROUND**

Defendant Gene Arnold (Sheriff Arnold) was the Sanders County Sheriff and "was responsible for overseeing the Sander's County Sheriff's Office" on July 24, 1997, the day Tash was killed in Sanders County.  (Doc. 3 at ¶ 5).  Defendant Perry Mock (Deputy Mock)[1]  was employed as a Sanders County Deputy at the time of Tash's death.  (Doc. 6).

On July 24, 1997, Defendant and Sanders County Deputy Wayne Abbey (Deputy Abbey) saw three men (Raugust, Ross and Tash) leave the Naughty Pine Saloon at closing time, get into Ross's vehicle, drive to Miller's Market parking lot and then continue down Highway 200.  (Doc. 3 at ¶ 14).  Deputy Abbey saw Ross's vehicle stop on Highway 200 long enough for someone to exit the vehicle.  (Doc. 3 at ¶ 15).  Deputy Abbey saw Randy Fisher's vehicle leave Miller's Market after Ross's vehicle began traveling down Highway 200.  (Doc. 3 at ¶ 16).

/ / /

---

[1] The named defendant is the Estate of Perry Mock, as Mr. Mock is deceased.

Ross called 911 shortly before 5:30 a.m. on July 24, 1997.  Deputy Abbey, the first responder to the 911 call, arrested Raugust about six hours after responding and being informed by Ross that Raugust had murdered Tash.  (Doc. 3 at ¶ 18).  Raugust maintained his innocence from the beginning and provided an alibi defense, claiming that Ross had dropped him off at Rick Scarborough's house after the three men left Miller's Market, and that he was sleeping at Scarborough's house when Tash was killed.  (Doc. 3 at ¶¶ 17 and 19).

Deputy Abbey failed to include his observations of Raugust, Ross, Tash and Fisher prior to the 911 call in his initial report regarding the investigation of Tash's death.  (Doc. 3 at ¶¶ 20 - 21).  Deputy Abbey prepared a supplemental report in early September of 1997, at the direction of the Sanders County Attorney.  The supplemental report included "the bar check at the Naughty Pine Saloon and seeing Tash, Ross and Raugust, but omitted [Deputy Abbey's] alibi confirming observation where he saw Ross's vehicle stop on Highway 200."  (Doc. 3 at ¶ 34).  Raugust learned of this omission in August of 2013.  (Doc. 3 at ¶ 20).

On the day of Tash's death (July 24, 1997), Doug and Lori Cooper saw Ross's vehicle drive to Scarborough's residence without headlights between 5 and 5:15 a.m., park briefly in Scarborough's yard, and then head down Larch Street toward Marten Creek Road.  (Doc. 3 at ¶ 35).  Sheriff Arnold, Deputy Abbey and

Deputy Mock investigated Tash's death. (Doc 3 at ¶ 33). Even though the
Coopers were Scarborough's neighbors, they were never questioned by "law
enforcement, including Sheriff Arnold, Deputy Abbey and Deputy Mock." (Doc. 3
at ¶ 36). "The Cooper's observations were not made known to Raugust or his
attorneys until August of 2013." (Doc. 3 at ¶ 38).

On August 12, 1997, an information was filed against Raugust in Sanders
County District Court in *Montana v. Raugust*, Criminal Cause Number 1997-27.[2]
Raugust filed a number of motions, including a motion for special funds to hire an
investigator and a notice of intent to introduce an alibi defense before his case went
to trial on March 24, 1998.

During trial, Scarborough contradicted Raugust's alibi by claiming that
Raugust "did not sleep at his house, but walked to Scarborough's house in the early
morning of July 24, 1997." (Doc. 3 at ¶ 28). "At Raugust's trial, effectively to
bolster Scarborough's testimony, [the prosecuting attorney] elicited testimony from
Scarborough that he had not been criminally implicated in the crimes." (Doc. 3 at
¶ 48). "Upon information and belief, . . . [the prosecuting attorney] did not
disclose to Raugust and his attorneys that Scarborough was a confidential

---

[2] The Court obtained a case register report for the underlying criminal and civil state law
cases and takes judicial notice of the dates on which various events occurred to assist in creating
a chronology of events.

informant." (Doc. 3 at ¶ 49).   After Raugust was convicted and sentenced, the Lake County Attorney charged Scarborough with accountability for deliberate homicide, attempted deliberate homicide and robbery.  (Doc. 3 at ¶ 47).

On March 26, 1998, a jury convicted Raugust of deliberate homicide, attempted arson and attempted tampering.  (Doc. 3 at ¶ 45).  On June 9, 1998, Raugust was sentenced to ten years for using a weapon, to run consecutive to his concurrent ten year sentence for attempted tampering, twenty year sentence for attempted arson, and life sentence for deliberate homicide.  (Doc. 3 at ¶ 46).

On August 29, 2012, Raugust filed a petition for post-conviction relief in Sanders County District Court.  *Raugust v. Montana*, Cause No. DV 12-108. Raugust was represented at the time by Brendan McQuillan, Esq.  It appears from the case register report that Judge McNeil, who had presided over Raugust's criminal trial, asked Judge Wheelis to assume jurisdiction over the petition in late 2012.   Following the filing of a number of motions, Judge Wheelis set a hearing, which was held on December 17 and 18 of 2014.[3]

Judge Wheelis "reversed Raugust's conviction and scheduled his case for a new trial" on November 16, 2015.  (Doc. 3 at ¶ 50).  In early December, "Judge

---

[3]   These facts are drawn from the case register report, as they were not included in Plaintiff's complaint.

Wheelis ordered Raugust's conditional release and the State appealed the reversal

of the conviction." (Doc. 3 at 51).  In August of 2016, the appeal was dismissed in

response to the State's motion.  (Doc. 3 at ¶ 52).  Although Raugust was released

from prison, he remained on state supervision until September 9, 2016, when the

presiding state court judge granted the State's motion to dismiss.  (Doc. 3 at ¶ 53).

**DISCUSSION**

    <u>Statute of Limitations – State Law Claims</u>

    As explained in its order dismissing Plaintiff's claims against the State, the

Court looks to state law to determine statute of limitation issues as to Plaintiff's

state law claims.  Under Montana law, "the limitations period begins to run 'when

all elements of the claim or cause exist.'" *Norbeck v. Flathead County*, 438 P.3d

811, 817 ¶ 18 (Mont. 2019)(quoting Mont. Code Ann. § 27-2-102(1)(a)).  There

are circumstances in which the statute does not begin to run "until the injured party

discovers the facts constituting the claim or, in the exercise of due diligence,

should have discovered the facts constituting the claim." *Id*. at ¶ 19.

Given Plaintiff's admission that by August of 2013, he had learned that

"Defendants" failed to provide certain information to his defense counsel before

his criminal trial, the Court has determined that the latest date on which the statute

of limitations began running on Raugust's state law claims was August 31, 2013.

The next issue that the Court must decide is whether the limitations period was tolled by Raugust timely presenting his claims to Sanders County pursuant to Mont. Code Ann. § 2-9-301(3).  So long as Raugust presented his claim to Sanders County before his limitations period expired, his statute of limitations was tolled until denied by Sanders County under Mont. Code Ann. § 27-2-209(3).  *See Estate of Woody v. Big Horn County*, 376 P.3d 127, 131 (Mont. 2016).

Although Plaintiff alleges in his complaint that he "complied with the notice requirements of" Mont. Code Ann. § 2-9-301, (Doc. 3 at ¶ 10), his complaint fails to state when he presented his claim to the County Defendants.  The parties appear to agree that Sanders County did not receive the claim presented by Raugust until July 15, 2019.  (Doc. 12 at 17).  Raugust's untimely presentment of claim did not toll the already expired statute of limitations as to his state law claims.

Statute of Limitations – Federal Law Claim

The start of the limitations period as to  Plaintiff's § 1983 claim is governed by federal law, specifically by the Supreme Court's decision in *Heck v. Humphrey*, which prevents a state prisoner from recovering damages under § 1983 for an "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" without first proving "that the conviction or sentence has been reversed on direct

appeal, expunged by executive order, declared invalid by a state tribunal authorize to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486 - 487 (1994). Plaintiff argues that *Heck* barred him from filing his case until September 9, 2016, the date the state court dismissed the criminal charge against him. The County Defendants argue that the statute of limitations began to run "no later than November 16, 2015," the date that Judge Wheelis granted Raugust's petition for post-conviction relief, reversed his conviction, and set a new trial date.

In deciding this issue, the Court must determine whether Raugust's criminal conviction was invalidated by Judge Wheelis's November 16, 2015, order granting Raugust's petition for post-conviction relief, or by Judge Wheelis's September 12, 2016, order dismissing the pending criminal charges against Raugust. Plaintiff cites *Bradford v. Schershligt*, 803 F.3d 382 (9th Cir. 2015), to support his position that Raugust's § 1983 claim did not accrue until the charges against him were fully resolved by the State's dismissal of those charges. The County Defendants argue that *Bradford* supports their position that his cause of action accrued as soon as the state district court invalidated his conviction, even though the State appealed the district court's decision.

/ / /

In 2008, "the Washington State courts vacated [Bradford's 1996] conviction [for residential burglary and rape] based largely on newly-available DNA testing, which excluded him as a contributor of genetic material found at the crime scene." *Id.* at 383. Even though Bradford had served his full ten-year sentence, prosecutors chose to retry the case, which resulted in an acquittal in 2010. *Id.* Within three years of Bradford's acquittal but more than four years after his conviction was vacated, Bradford filed a § 1983 case against a detective with the Yakima police department alleging that the detective had deliberately fabricated evidence. *Id.* at 384. The district court granted the detective's motion for summary judgment, "determining that the running of the three-year statute of limitations began on the vacatur of Bradford's conviction and not the date of his acquittal." *Id.* The Ninth Circuit reversed, holding "that Bradford's claim accrued when he was no longer subject to criminal charges." *Id.*

Raugust, unlike Bradford, had not completed serving his sentence prior to the vacatur of his conviction. This case can also be distinguished from *Bradford* because Raugust's § 1983 claim is based on the alleged failure to disclose exculpatory evidence, not fabrication of evidence.

The Ninth Circuit considered the accrual date for a conviction resulting from a failure to provide exculpatory information in *Rosales-Martinez v. Palmer*, 753

F.3d 890 (9th Cir. 2014).  The district court in that case granted summary judgment

to the defendant police officer, finding that the plaintiff's claim accrued when the

plaintiff discovered that a confidential informant who had testified against him had

an extensive criminal history that had not been disclosed prior to trial. *Id.* at 891.

The Ninth Circuit disagreed, holding that *Heck* prevented Rosales-Martinez from

bringing a claim under § 1983 until December 2, 2008, when the Nevada court

vacated his criminal convictions because to prove his § 1983 case, Rosales-

Martinez needed to prove that the failure of the defendants to  disclose the

confidential informant violated his constitutional rights and caused him to be

wrongfully convicted, thereby invalidating his criminal convictions. *Id.* at 896.

    As the Ninth Circuit explained in *Bradford,* Rosales-Martinez's limitations

period began to run on the date his conviction was vacated because the vacatur was

part of "a comprehensive plea agreement that resolved all outstanding charges

against" Rosales-Martinez, and therefore "marked the date on which [Rosales-

Martinez] could no longer be prosecuted for the underlying charges." *Bradford*,

803 F.3d at 387.

    Raugust's case can be distinguished from *Rosales-Martinez* because Judge

Wheelis did not vacate Raugust's  conviction with prejudice and release him from

state custody.  Instead, Judge Wheelis ordered his conditional release and set a new

trial date.  There is nothing in the complaint or the case register report from the underlying case to support the County Defendants' claim that Judge Wheelis's November 16, 2015, order prevented the State from bringing the same evidence against Raugust at a new trial as the evidence that resulted in his first conviction. The main difference in the two trials would have been that if the State had chosen to retry Raugust, he would have had access to the exculpatory information that the County Defendants allegedly failed to disclose prior to the trial that led to his conviction.  Like Bradford, Raugust "remained subject to the very same charges based on the same evidence" until the State dismissed the pending charges against him on September 9, 2016.  *Bradford*, 803 F.3d at 388.  The limitations period on Raugust's § 1983 claim against the County Defendants began to run on September 9, 2016, over three years before Raugust filed his complaint in state court.

Raugust argues that his federal law claim, like his state law claim, was tolled for 120 days once Sanders County received his claim on July 15, 2019.  The 120-day tolling provision relied on by Raugust applies only to claims against the State of Montana.  Mont. Code Ann. § 2-9-301(2).  Mont. Code Ann. § 2-9-301(3) "contains no tolling provision for claims against political subdivisions." *Estate of Woody,* 376 P. 3d at ¶ 10.  The Court's analysis of this issue does not end with Mont. Code Ann. § 2-9-301(3) because once a claim is timely presented to a

county, the limitations period is tolled until the county commissioners reject the claim, at which point the plaintiff has six months in which to file suit against the county. *Id.* at ¶ 19 (citing Mont. Code Ann. § 27-2-209).

The County Defendants have conceded, for purposes of the motion to dismiss, that Sanders County presented  Raugust's claims against them within three years of September 9, 2016.  While Raugust's presentment of claim was untimely for purposes of his state law claims, it was timely for purposes of his federal law claim.

<u>Deficiencies in Complaint</u>

The County Defendants correctly point out that the complaint's frequent reference to Defendants in the collective does not provide the necessary notice required by Fed. R. Civ. P. 8(a)(2) in a case naming multiple defendants.  This deficiency is particularly problematic in this case because the complaint names two separate government entities and three individuals, who are named in both their individual and official capacities, and names up to 50 "John Doe" defendants, without making any attempt to provide additional information about them.

The distinction between individual and official capacity suits is relevant to Plaintiff's claim under 42 U.S.C. § 1983 because § 1983 suits against agents of governmental entities in their official capacity should be treated as suits against the

governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Naming the individual defendants in their official capacity is unnecessary as Sanders County is also named in the complaint.

To state a § 1983 claim against Sanders County, Raugust must show that Sanders County had a policy, practice, or custom that was "a moving force behind" the alleged violation of Raugust's constitutional rights. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Raugust can meet his burden at this stage of the proceeding by alleging facts sufficient to show (1) the existence of a policy or custom, (2) that his rights were violated by a final policy making authority, or (3) that the final policy making authority ratified the decision made by the individual who committed the constitutional violation. *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).

Montana is similar to California in that a county sheriff is a policy maker for the county when investigating crime. *See Brewster v. Shasta County*, 275 F.3d 803, 805 (9th Cir. 2001)(concluding "that the sheriff's department, when investigating crime, acts for the county and therefore the county is subject to section 1983 liability"). Plaintiff has alleged sufficient facts to demonstrate that Sheriff Arnold was the chief policy maker for the Sanders County Sheriff's Office at the time that Deputy Abbey wrote the reports that failed to disclose exculpatory

information.  Plaintiff speculates that Sheriff Arnold must have known that Deputy Abbey withheld exculpatory information or that Deputy Abbey was following Sheriff Arnold's policy based on the small size of the Sanders County Sheriff's Office.  Such speculation is not sufficient to state a plausible § 1983 claim against Sanders County.

When suing government officials in their individual capacity under § 1983, a plaintiff must allege specific facts linking each individual defendant "to the constitutional violations at issue." *Torlucci v. Norum*, 509 Fed. Appx. 636, 637 (9th Cir. 2013).  The constitutional violation at issue here is the failure to disclose exculpatory information.  Sheriff Arnold and Deputy Mock's alleged failure to interview every possible witness during the investigation of Tash's death does not demonstrate their involvement in Abbey's alleged violation – the failure to disclose exculpatory information.

<u>Request for Leave to Amend</u>

In his response to the County Defendants' motion to dismiss, Raugust asks the Court to grant him leave to amend to cure any deficiencies in the complaint. This Court has considered whether the deficiencies in Plaintiff's complaint can be cured by additional allegations, as required by the Ninth Circuit. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).  As explained above, Raugust's state law

claims against the County Defendants are barred by the statute of limitations and cannot be cured by an amended pleading.

Although Raugust's complaint alleges sufficient facts to state a plausible § 1983 claim against Deputy Abbey, when stripped of legal conclusions and the allegations that fail to distinguish between the individually named defendants, the complaint fails to state a plausible § 1983 claim against Sanders County, Sheriff Arnold or Deputy Mock.  Raugust may be able to plead additional facts as to his claims against those defendants, and should be permitted to do so.

"As a general rule, the use of 'John Doe' to identify a defendant is not favored."  *Gillespie v. Civiletti*, 629 F.2d 637 642 (9th Cir. 1980).  There is an exception for situations where a plaintiff can describe an individual who caused his injury, but cannot identify that individual by name.  This does not appear to be such a case, as Raugust has apparently named each Sanders County law enforcement officer who may have been involved in the investigation that led to his conviction.  Indeed, his argument that Sheriff Arnold and Deputy Mock were involved in the violation of his constitutional rights is based in part on the small size of the Sanders County Sheriff's Office.  If Raugust chooses to name additional "John Doe" defendants in his amended complaint, he should be prepared to allege specific facts as to the unidentified defendant's violation of his rights.

**CONCLUSION & ORDER**

**IT IS HEREBY ORDERED** that the County Defendants' motion to dismiss (Doc. 4) is GRANTED in part and denied in part as follows:

Plaintiff's state law claims (Counts 1 through 3, 5, and 6) are DISMISSED with prejudice.  Plaintiff's federal law claim (Count 4) against Defendants Wayne Abbey, Gene Arnold, and Estate of Perry Mock in their official capacities is DISMISSED with prejudice.

Plaintiff's federal law claim against Sanders County is DISMISSED with leave to amend.

Plaintiff's federal law claim against Defendants Gene Arnold and Estate of Perry Mock in their individual capacities is DISMISSED with leave to amend.

**IT IS FURTHER ORDERED** that Plaintiff shall file an amended complaint within fourteen days of entry of this order.  Defendants shall file a responsive pleading or appropriate motion within fourteen days of service of the amended complaint.

DATED this _____7th_____ day of July, 2020.

Charles C. Lovell
Senior United States District Judge