Hillary P. Carls
Sherine D. Blackford
Blackford Carls P.C.
602 W. Lamme Street
Bozeman, MT 59715
406.577.2145
406.219.0256 (fax)
carls@blackfordcarls.com
sherine@blackfordcarls.com

Melinda Driscoll
Russ Plath Law, LLC
2624 Minnesota Avenue
P.O. Box 1337
Billings, MT 59103-1337
406.534.4177
406.534.6717 (fax)
melinda@russplathlaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| Richard Raugust,<br><br>        Plaintiff,<br>  vs.<br><br>County of Sanders and Wayne Abbey,<br><br>       Defendants. | CV 20-9-H-CCL<br><br><br>**First Amended Complaint**<br>**& Jury Trial Demand** |

Plaintiff Richard Raugust by and through his attorneys, Hillary P. Carls and

Sherine D. Blackford of Blackford Carls P.C. and Melinda Driscoll of Russ Plath

Law, LLC, pursuant to the Opinion & Order (July 8, 2020) (Doc. 27), files his First Amended Complaint & Jury Trial Demand and alleges as follows:

## Parties

1.      At all times relevant hereto, Plaintiff Richard Raugust ("Raugust") resided in Montana. He currently resides in California.

2.      Defendant County of Sanders ("County") is a political subdivision of the State of Montana.

3.      Defendant Wayne Abbey ("Deputy Abbey") is a former law enforcement officer with the Sanders County Sheriff's Office. At all times relevant hereto, Deputy Abbey resided in Sanders County, Montana.

## Jurisdiction

4.      This action arises under the United States Constitution and 42 U.S.C. § 1983.

5.      The County and Deputy Abbey removed this matter to federal court on February 4, 2020.  Jurisdiction is proper in the United States District Court, for the District of Montana.

## Factual Allegations

6.      In July 1997, Raugust was 31 years old. He had recently moved to Trout Creek, Montana and was living at a campsite with his friend, Joe Tash ("Tash").

7.      On July 24, 1997, Deputy Abbey was on duty in his role as a Deputy

Sanders County Sheriff. While making a bar stop at the Naughty Pine Saloon in

Sanders County, Deputy Abbey observed Rory Ross ("Ross"), Raugust, and Tash

at approximately closing time get into Ross's vehicle, drive to the Miller's Market

parking lot, leave the parking lot, and continue down Highway 200.

8.      Deputy Abbey then observed Ross's vehicle stop on Highway 200, and both

the red brake lights and white cabin dome light illuminate.  Ross's vehicle stopped

long enough for someone to exit the vehicle.

9.      Deputy Abbey then observed Randy Fisher's vehicle leave Miller's Market

after Ross's vehicle again began traveling down Highway 200.

10.     Raugust explained that on July 24, 1997 after leaving Miller's Market, Ross

stopped his vehicle on Highway 200 at Fir Street, where Raugust exited Ross's

vehicle and walked to Rick Scarborough's ("Scarborough") house to sleep.

11.     At approximately 5:26 a.m. on July 24, 1997, Ross called 911.  Deputy

Abbey was the first to respond. Ross reported that Raugust had murdered Tash.

Approximately six hours later, Sheriff Gene Arnold, Deputy Perry Mock and

Deputy Abbey arrested Raugust for murdering Tash.

12.     Raugust uniformly denied the allegations against him, asserting an alibi

defense that he was sleeping at Scarborough's house and not with Ross or Tash at

the time of the murder.  Raugust last saw his friend Tash when Raugust was

dropped off on Highway 200 at Fir Street.

13.     Deputy Abbey did not share his observations of Ross's vehicle stopping on

Highway 200, as outlined in Paragraphs 8 and 9, with Raugust or his attorneys

until August of 2013.

14.     Deputy Abbey did not include these observations in his police reports

regarding this investigation and crime.

15.     Deputy Abbey did not testify regarding these observations at trial.

16.     At trial, no witness supported Raugust's alibi.

17.     At trial, no witness supported Raugust's explanation that Ross stopped his

vehicle on Highway 200 and Raugust then exited the vehicle to sleep at

Scarborough's house.

18.     Rather, Ross denied stopping his vehicle after leaving Miller's Market.

19.     Ross testified that he saw Raugust kill Tash.

20.     Scarborough testified that Raugust did not sleep at his house, but walked to

Scarborough's house in the early morning of July 24, 1997.

21.     Randy Fisher testified that he did not see Ross's vehicle stop on Highway

200.

22.     Deputy Abbey's observations would have undermined the testimony of

Ross, Scarborough, and Fisher at trial, and confirmed Raugust's alibi and defense.

4

23.    The County knew or should have known Deputy Abbey's observations because Deputy Abbey was a Sanders County Sheriff's Deputy and made these observations during the course and scope of his employment.

24.    Deputy Abbey was the first responder to the murder investigation, collected evidence and investigated Tash's death, yet failed to disclose key observations regarding this crime and Raugust's alibi defense, and failed to conduct a thorough investigation.

25.    At the direction of the Sanders County Attorney, on September 4, 1997, Deputy Abbey even supplemented his initial report to include the bar check at the Naughty Pine Saloon and seeing Tash, Ross and Raugust, but omitted his alibi confirming observation where he saw Ross's vehicle stop on Highway 200.

26.    Deputy Abbey's failure to disclose his observations reflect one of many significant errors that the County made in training its law enforcement officers to properly investigate crimes.

27.    At all relevant times, the County, by and through its Sheriff, was the final policy maker authority for the Sanders County Sheriff's Office and law enforcement for the County. (Doc. 27 at 15).

28.    The County is responsible for training its law enforcement officers, including, but not limited to, Deputy Abbey.

29.     The County acted with deliberate indifference and did not train Deputy

Abbey:

    a.     About the importance of disclosing exculpatory evidence;

    b.     That alibi confirming observations are exculpatory evidence that must

be disclosed;

    c.     To disclose all facts observed in a criminal investigation, even those

that do not support original theories of the crime;

    d.     Identify and know what facts and observations to include in his

reports; and

    e.     What investigative actions are necessary to ensure that a suspect's

Constitutional rights are intact.

30.     The County acted with deliberate indifference and did not train its law

enforcement officers to properly investigate crimes, especially significant crimes

such as the Tash murder.

31.     The County's failure to train resulted in its law enforcement officers:

    a.     Not disclosing Deputy Abbey's alibi confirming observations;

    b.     Not interviewing Doug and Lori Cooper, Scarborough's neighbors,

when they observed Ross's vehicle drive to the Scarborough residence

without headlights between 5:00-5:15 a.m. on July 24, 1997, park in the

yard, then head down Larch Street toward Marten Creek Road;

c.      Ignoring other suspects who may have committed the murder, but bolstering Ross to witnesses and protecting Ross in the investigation;

d.      Focusing solely on the original theory of the case;

e.      Failing to gather and secure evidence, including, but not limited to, the fifth-wheel camper, firearms, slash pile remnants, keys to Ross's vehicle, identity of all fingerprints and evidence found in Ross's vehicle, Raugust's clothes, Ross's clothes, the Ross and Scarborough residences, and trace evidence, including gunshot residue on any individual;

f.      Failing to properly secure and search the scene of the murder, including the fifth-wheel camper and camp site;

g.      Ignoring Ross's confession to Fisher that Ross killed Tash;

h.      Ignoring Scarborough's confession to Tom Scarborough that Ross murdered Tash, that Raugust was asleep at Scarborough's house during the murder, and that the story about Raugust murdering Tash was a lie; and

i.      Ignoring the confidential informant status of Scarborough.

32.    The County's failure to train resulted in the investigation errors and violated Raugust's Constitutional rights.

33.    The County's policy and customs failed to train Deputy Abbey and its law enforcement officers.

34.     Had the County properly trained its law enforcement officers, the law

enforcement officers would have known how to properly investigate this crime.

35.     Had the County properly trained its law enforcement officers, the law

enforcement officers would have known not to make these investigative errors.

36.     Accordingly, Raugust was precluded from presenting such evidence in his

defense at trial.

37.     On March 26, 1998, a jury convicted Raugust of Deliberate Homicide,

Attempted Arson, and Attempted Tampering with or Fabricating Physical

Evidence.

38.     On June 9, 1998, Raugust was sentenced to life in prison for Deliberate

Homicide, 20 years for Attempted Arson, and 10 years for Attempted Tampering

with or Fabricating Physical Evidence, all to run concurrently, with an additional

consecutive 10 years for using a dangerous weapon in the offense.

39.     On November 16, 2015, Judge James B. Wheelis reversed Raugust's

conviction and scheduled his case for a new trial.  *See* Findings of Fact,

Conclusions of Law, and Order and Notice of Continuing Jurisdiction (Nov. 16,

2015) (Exhibit 1).

40.     On December 4, 2015, Judge Wheelis ordered Raugust's conditional release

and the State appealed the reversal of the conviction.

41.     Over nine months later, on August 24, 2016, the State moved to dismiss its appeal and on August 25, 2016, the Montana Supreme Court dismissed the appeal.

42.     On September 6, 2016, the State moved to dismiss the trial setting in the District Court.  On September 9, 2016, after over 19 years, Raugust's legal nightmare ended and his case was ordered dismissed.  He was finally no longer under the supervision of the State for a crime he did not commit.

43.     By this point, over 6,987 days had passed since his arrest.

44.     During these 19 years, the majority of which Raugust was incarcerated, he lost his freedom, physical liberty, income, and relationships.  He was forced to suffer extreme fear, emotional trauma, physical injuries, pain and suffering, embarrassment, humiliation, and injury to his reputation, among countless other injuries and damages.

45.     As a result of the above actions and inactions of Deputy Abbey and the County, Raugust suffered serious or severe emotional distress.

46.     The serious or severe emotional distress that Raugust suffered were a reasonably foreseeable consequence of the actions of Deputy Abbey and the County.

47.     The actions of Deputy Abbey and the County resulted in the unlawful incarceration and imprisonment of Raugust.  The actions of Deputy Abbey and the

County deprived Raugust of his liberty of movement by restraining him against his will. The restraint was unlawful.

48.     The actions of Deputy Abbey and the County foreseeably created an unreasonable risk of harm to Raugust.

## 42 U.S.C. § 1983

49.     Plaintiff realleges each previous paragraph as though fully set forth herein.

50.     Deputy Abbey is a person subject to the United States Constitution.

51.     The County is a person subject to the United States Constitution.

52.     Raugust is a person protected by the United States Constitution.

53.     Federal law provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

54.     The United States Constitution, Amendment VI, provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

55.     The United States Constitution, Amendment XIV, § 1 provides:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws.

56.     The actions and inactions of Deputy Abbey and the County violated Raugst's rights within the United States Constitution, Amendments VI and XIV.

## § 1983-Deputy Abbey

57.     Plaintiff realleges each previous paragraph as though fully set forth herein.

58.     Raugst's Constitutional rights required Deputy Abbey to disclose evidence materially favorable to Raugst, including Deputy Abbey's alibi confirming observations.

59.     Deputy Abbey failed to disclose these observations.

60.     Deputy Abbey violated Raugst's Constitutional rights.

61.     Deputy Abbey proceeded with an unreasonable and deliberate indifference regarding his failures and the violation of Raugust's Constitutional rights.

62.     Deputy Abbey's violations of Raugust's Constitutional rights shock the conscience.

63.     Pursuant to 42 U.S.C. § 1983, Deputy Abbey is liable to Raugust because he deprived Raugust of his Constitutional rights.

64.     As a result of Deputy Abbey's violations of Raugust's Constitutional rights, Raugust has been and continues to be injured and damaged in an amount to be determined at trial.

### § 1983-County

65.     Plaintiff realleges each previous paragraph as though fully set forth herein.

66.     "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those who edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978).

67.     "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the

rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

68.    A sheriff's primary role is to investigate and solve crimes. The County has the duty to properly train its law enforcement officers to investigate crimes and disclose evidence.

69.    The County failed to train its law enforcement officers, including, but not limited to, Deputy Abbey.

70.    The County breached its duty to train.

71.    The County proceeded with an unreasonable and deliberate indifference regarding the training of its law enforcement officers, which violated Raugust's Constitutional rights.

72.    The County's violations of Raugust's Constitutional rights shock the conscience.

73.    The County's policy and customs unreasonably resulted from its deliberate indifference to train its law enforcement officers. The County's deliberate indifference to training its law enforcement officers reasonably resulted in a poor investigation and conviction of an innocent man.

74.    As a result of the County's breach, Raugust's Constitutional rights were violated.

75.    The County's failure to properly train its law enforcement officers resulted in Raugust's wrongful arrest and conviction.

76.    Pursuant to 42 U.S.C. § 1983, the County is liable to Raugust because it deprived Raugust of his Constitutional rights.

77.    As a result of the County's violations of Raugust's Constitutional rights, Raugust has been and continues to be injured and damaged in an amount to be determined at trial.

## Punitive Damages-Deputy Abbey

78.    Plaintiff realleges each previous paragraph as though fully set forth herein.

79.    That, upon information and belief, Deputy Abbey committed the acts alleged herein with knowledge of facts or with intentional disregard of facts that created a highly probability of injury to Raugust, and (a) deliberately or recklessly proceeded to act in conscious or intentional disregard of the high probability of injury to Raugust; and/or (b) deliberately or recklessly proceeded to act with indifference to the high probability of injury to Raugust.

80.    Deputy Abbey's actions were "motivated by evil motive or intent, or … involve[d] reckless or callous indifference to the federally protected rights of [Raugust]." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

81.    By performing the acts alleged, Deputy Abbey acted with deliberate disregard for Raugust's Constitutional rights, permitting an award for punitive damages.

82.    By performing the acts alleged, Deputy Abbey acted with malice towards Raugust, permitting an award for punitive damages.

## Jury Trial Demand

Plaintiff Richard Raugust demands trial by jury on all issues so triable.

## Prayer for Relief

Plaintiff Richard Raugust prays for judgment as follows:

1.    Compensatory damages from the County and Deputy Abbey, jointly and severally;

2.    Punitive damages against Deputy Abbey;

3.    Costs and disbursements incurred herein;

4.    Interest;

5.    Attorneys' fees; and

6.    Any additional relief the Court deems just and appropriate.

Dated this 22nd day of July, 2020.

 /s/ Hillary P. Carls
Hillary P. Carls
Sherine D. Blackford
Melinda Driscoll
*Attorneys for Plaintiff*