IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| RICHARD RAUGUST,<br><br>Plaintiff,<br><br>vs.<br><br>WAYNE ABBEY and SANDERS COUNTY,<br><br>Defendants. | CV 20–09–H–DWM<br><br>OPINION<br>and ORDER |

This case stems from the wrongful conviction of Plaintiff Richard Raugust for the murder of Joe Tash. Raugust brings a 42 U.S.C. § 1983 claim against Defendant Wayne Abbey,[1] a Sanders County deputy sheriff, premised on Abbey's alleged failure to disclose evidence materially favorable to Raugust in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Both Raugust and Abbey seek in limine rulings regarding certain trial evidence. (Docs. 65, 89.) Those motions are granted in part and denied in part as outlined below.

## ANALYSIS

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108,

---

[1] Sanders County was added as a defendant after the present motions were filed.

1

1111 (9th Cir. 2009). "A district court is accorded wide discretion in determining the admissibility of evidence under the Federal Rules." *Sprint/United Mgm't Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008). "Still, a motion in limine should not be used to resolve factual disputes or weigh evidence." *Asarco LLC v. Atl. Richfield Co.*, 2021 WL 347708, *2 (D. Mont. Feb. 2, 2021). "In limine ruling are not binding on the trial judge, and the judge may always change his mind during the course of trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

I. **Raugust's Motions in Limine (Doc. 65)**

    A. **Motion 1:** *Muir's legal conclusions*

    Disposition: GRANTED in PART and DENIED in PART

Mark Muir has been retained as Abbey's police practices expert. Raugust argues that legal conclusions made by Muir in his expert report and rebuttal report are inadmissible. Specifically, Raugust challenges Muir's opinion that Abbey's actions do not meet the legal standard of deliberate indifference. Raugust argues that Muir's opinion inappropriately considers and assesses Abbey's mental state. Although testimony is not excludable merely because it embraces an ultimate issue, Fed. R. Evid. 704, an expert witness may not offer testimony in the form of legal conclusions, *Hanharter v. Provident Life*, 373 F.3d 998, 1016 (9th Cir. 2004). *Cf. Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) (whether officer's conduct was "objectively reasonable" in Fourth Amendment context is a question reserved

2

for the jury); *Stakey v. Stander*, 2011 WL 887563, at *3 (D. Idaho Mar. 10, 2011) (prohibiting medical experts from testifying whether a defendant was deliberately indifferent in an Eighth Amendment medical care case). Here, while none of Muir's opinions explicitly state "deliberate indifference," they do draw conclusions as to the legal elements of such a claim, such as materiality of the underlying evidence. Such testimony is improper.

Nonetheless, just because it is for the jury to decide whether Abbey's conduct rose to the level of deliberate indifference does not mean that Muir's testimony is not admissible to the extent it "help[s] the trier of fact" in either "understand[ing] the evidence or . . . determin[ing] a fact in issue." Fed. R. Evid. 702(a). Muir's testimony regarding his experience and opinions as to police practices and procedures may do both. *See Mellen v. Winn*, 900 F.3d 1085, 1104 (9th Cir. 2018) ("The [police practices expert] report should have been admitted to assist the trier of fact in determining whether [defendant's] conduct deviated so far from institutional norms that the jury could conclude that [defendant] was reckless or deliberately indifferent to [plaintiff's] constitutional rights."). Accordingly, Raugust's Motion No. 1 is GRANTED insofar as Muir is cautioned against using legal terms to draw conclusions about what occurred in this case, but it is DENIED subject to specific trial objection in all other respects.

**B.     Motion 2:** *Muir's subjective or speculative opinions*

Disposition: GRANTED in PART and DENIED in PART

Raugust further argues that some of Muir's opinions are subjective or speculative and as such are "improper to submit to a jury." (Doc. 66 at 8.) For example, Raugust challenges Muir's opinion that Abbey would not have been aware his observation of Ross's vehicle stopping on the highway was material or relevant. (Doc. 66-2 at 10.) Similarly, Raugust objects to Muir's opinion that "Raugust could have made a voluntary statement of innocence at the time Abbey placed him under arrest," (*id.* at 12), which would have alerted Abbey to Raugust's alibi and therefore triggered Abbey's memory.

For expert testimony to be admitted under Rule 702, it must be "based on sufficient facts or data." Speculation about what could have occurred if Raugust or trial counsel had proceeded differently falls outside of this reasoned process. While Muir may testify to the implications of proper police process and how an officer should assess and relay his observations based on his experience, Muir may not opine on what Abbey thought or how others involved in the case could or should have acted. Accordingly, Raugust's Motion No. 2 is GRANTED insofar as Muir's Opinion No. IV, Opinion No. III(4), and Opinion No. II(4) are excluded.

**C.     Motion 3:** *Postconviction Counsel*

Disposition: GRANTED

4

Raugust seeks to prevent Muir from citing or relaying the arguments of Brendan McQuillen, Raugust's postconviction counsel. Because attorney arguments do not constitute evidence, allowing Muir to refer to it in his testimony runs the risk of misleading and confusing the jury, to the extent that it would conflate their perception of what "evidence" is and thus it may influence their adjudication of the facts in the case. *See* Fed. R. Evid. 403. Indeed, McQuillen's statements were made in the context of a different proceeding, whereby the issue before the state court was whether Raugust had been wrongfully convicted. This contrasts with the present issue before this Court, which is the culpability of Abbey. Raugust's Motion No. 3 is GRANTED.

**D.     Motion 4:** *Department of Justice ("DOJ") Investigation and Report*

Disposition: GRANTED, but reserve as to scope and specific use

This motion is particularly contentious. Raugust seeks to disclose evidence pertaining to a DOJ investigation into the Missoula Police Department during Muir's tenure as its chief. The investigation revolved around the Department's investigative practices in sexual assault cases. Indeed, the DOJ was quite critical of the Department and found that it "relied on practices that often substantially compromised the investigation, including by demonstrating disproportionate concern for the male suspects." (Doc. 66-6 at 13.) Abbey contends that Raugust's motivation in wanting this evidence to be admitted is to diminish Muir's

5

credibility. Abbey also argues that this evidence is not relevant to this particular case. In contrast, Raugust insists that this evidence speaks to Muir's experience and judgment and as such bears on the weight the jury should give his testimony.

The Rules of Evidence present two obstacles to the evidence's admission here: relevancy and the danger of undue prejudice. Under Rule 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Both elements are met here. While Abbey is correct that the DOJ Report does not regard this specific investigation, Abbey has proffered Muir as an expert in police practices, specifically investigative practices. And, those practices are dispositive of Abbey's culpability here. It is reasonable for the jury to consider Muir's background in policing and scrutinize his time as police chief as both experiences speak to his credibility as a witness. The evidence therefore passes the test of relevancy. Nor does the prejudicial effect of such evidence necessarily outweigh its probative value, Fed. R. Evid. 403, as it is highly probative of the credibility of Muir's assertion that the Tash investigation comported with constitutional requirements. That said, it is difficult to assess exactly how this evidence will be presented in the abstract, making it appropriate to leave the exact contours of the Report's admissibility until trial. As a result, Raugust's Motion

No. 4 is GRANTED, but the Court reserves ruling on the scope and specific use of that evidence until trial.

E.     **Motion 5:** *Evidence presented at criminal trial*

Disposition: DENIED subject to renewal at trial

Raugust bases this motion on the fact that the present case relates to Abbey's culpability and whether he acted with deliberate indifference; it is not a re-trial of Raugust for the murder. As such, Raugust maintains that evidence that was presented in his criminal trial is not pertinent to the matter of Abbey's conduct and its introduction risks contaminating this case with irrelevant and unduly prejudicial evidence. Indeed, the criminal trial was so fundamentally flawed that it culminated in the wrongful conviction of Raugust and Judge Wheelis ordering a new trial. Raugust also highlights the fact that it would not be possible for each witness to testify the same way that they did in the criminal trial, as new evidence has come to light in the intervening period, including Abbey's observations. While Rule 403 supports the exclusion of evidence that is cumulative or confuses the issues, Raugust's present motion is too broad and far reaching to implicate the concerns of Rule 403. There may be evidence that was presented at the criminal trial that remains relevant here—for example, evidence that bears on Abbey's knowledge of Raugust's alibi defense—that prevent a blanket ruling to this effect. That said, Abbey cannot use such evidence to undermine the import of the *Brady* evidence at

7

issue here, as that has been established as a matter of law by Judge Wheelis's 2015 Order. (*See* Doc. 107 at 18.) As such, Raugust's Motion No. 5 is DENIED subject to renewal at trial with that limitation in mind.

**F.** **Motion 6:** *Montana Supreme Court*

Disposition: GRANTED

Raugust once more grounds this motion on the principle that the arguments made in previous hearings regarding Raugust's conviction ought to be disregarded, owing to the fact they were based on a since overturned conviction. Raugust therefore challenges the admission of the decision of the Montana Supreme Court on the grounds that it is irrelevant and has the potential to confuse the jury as jurors might not be familiar with the contrast between the appellate and district courts and the procedural differences between those proceedings, as well as the current procedural posture of this case. *See* Fed. R. Evid. 403. In contrast, Abbey considers significant the fact that Raugust was able to pursue every avenue of his defense in terms of appealing his conviction. Abbey believes that the jury should understand that the Montana Supreme Court upheld the conviction, and that Raugust exhausted the appellate mechanisms available to him and was not deprived of such processes.

Raugust has the better argument. The appellate resolution of his now-set aside conviction is not relevant to this case. It appears that Abbey is trying to

undermine the significance of the constitutional violation at issue based on the due process Raugust received through his direct appeal. But that is not relevant to the only remaining question in this case: whether Abbey was deliberately indifferent in failing to disclose his complete observations from the night of the murder. Raugust's Motion No. 6 is GRANTED.

    **G.**    **Motion 7:** *Raugust's criminal history*

Disposition: GRANTED

Raugust was arrested in the 1980's following an altercation with his wife. But as discussed above, this case is not about whether facets of Raugust's past would have made it likely Raugust committed the murder. Raugust's conviction has already been overturned and it has been established that he did not murder Tash. As such, Raugust's criminal history is not relevant here.[2] *See* Fed. R. Evid. 402; *see also* Fed. R. Evid. 404(b)(1). Raugust's Motion No. 7 is GRANTED.

    **H.**    **Motion 8:** *Counsel at the criminal trial*

Disposition: GRANTED with narrow exception

Raugust argues that the actions of trial counsel—both defense and prosecution—are not relevant to this proceeding. Furthermore, Raugust insists that

---

[2] Because Raugust was not actually convicted of anything, Rule 609 does not apply. Even so, Rule 609(b)'s skeptical view of convictions older than ten years further supports excluding Raugust's criminal history.

their admission will lead to a scrutiny of whether Raugust's counsel and/or the prosecutor could have done more to make Abbey recall his memory of the vehicle stopping, rather than establishing Abbey's culpability. Indeed, as discussed above, Muir apportions blame on the trial counsel for Abbey's failure to disclose what he saw on the night in question. (Doc. 66-2 at 13–14.) As argued by Raugust, Abbey's efforts to shift a degree of blame to the attorneys is not permitted. Once again, whether Raugust received adequate process in other ways through his criminal trial is not relevant to the only remaining issue here: whether Abbey was deliberately indifferent. That said, there could be a narrow use for certain actions of trial counsel vis-à-vis what Abbey knew at the time, i.e., when the prosecutor requested a supplemental report and what he was asked on the stand. Accordingly, Raugust's Motion No. 8 is GRANTED, with the narrow exception of conduct that informs—without speculation—Abbey's knowledge at the time.

I.  **Motion 9:** *Raugust's pre-existing medical conditions*

Disposition: GRANTED in PART and DENIED in PART

This motion is intended to prevent the admission of evidence regarding Raugust's medical condition prior to his incarceration, namely a pre-existing back condition and the supposed deterioration of the same during his incarceration. Raugust claims that Abbey was required to get a medical expert to testify to his belief that Raugust's injuries are divisible and apportionable to another cause.

Conversely, Abbey contends that Raugust can testify regarding his own medical condition and that an expert is not required. Rule 701, which governs testimony by lay witnesses, provides guidance here:

> If a witness is not testifying as an expert, testimony in the form of opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

To be sure, Rule 701 has been used to bar lay witnesses from testifying as to their opinion on causation where such a determination would require the experience of an expert, including medical diagnoses. *See Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014) ("Under our case law, lay witness testimony is 'incompetent' when it consists of medical diagnosis, because medical diagnosis is beyond the competence of lay witnesses to make."). Nevertheless, a lay witness may testify as to his or her medically related experience under Rule 701. Indeed, "[t]he modern trend among courts favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *United States v. Valdez-Reyes*, 165 F. App'x 387, 392 (6th Cir. 2006). As such, Abbey is correct that Raugust, as a lay witness, can testify as to his personal knowledge of his medical condition and the jury is permitted to weigh

11

such information in assessing causation. *See Ele v. Ehnes*, 68 P.3d 835, 840 (Mont. 2003). Nevertheless, Raugust is correct that Abbey cannot seek to apportion medical damages in the absence of expert testimony. *See Clark v. Bell*, 220 P.3d 650, 655 (2009). Thus, Raugust's Motion No. 9 is GRANTED as to apportionment and DENIED as to causation, subject to a specific objection at trial.

**J.** **Motion 10:** *Medical or psychological opinions*

Disposition: DENIED, subject to renewal at trial

As discussed above, it is acceptable for a plaintiff to testify regarding his medical condition without the need for an expert. The point at which that testimony improperly wades into apportionment or medical diagnosis is a more nuanced question. Also, it is not apparent what aspect of the above evidence Raugust seeks to exclude. Given the vague nature of the request, Raugust's Motion No. 10 is DENIED subject to objection at trial.

**II.** **Defendant Abbey's Motion in Limine (Doc. 89)**

**A.** **Motion 1:** *De Foe standard of care*

Disposition: DENIED

Scott De Foe has been retained as Raugust's police practices expert. Abbey contends that De Foe should be prevented from testifying regarding a standard of care under 42 U.S.C. § 1983. Abbey argues that De Foe offering opinion as to how a reasonable officer would have acted, given the requirement of a finding of

12

deliberate indifference, would be prejudicial and irrelevant. In doing so, however, Abbey ignores that his own police practices expert, Muir, intends to offer such testimony as discussed above. (*See* Doc. 66-2 at 10 (Muir's first opinion states that Abbey "did not violate the standard of care for a law enforcement officer under these circumstances").) In the vein of what is good for the goose is good for the gander, Abbey's Motion No. 1 is DENIED.

**B.    Motion 2:** *Insurance*

Disposition: GRANTED

"Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully." Fed. R. Evid. 411. Raugust does not oppose this motion. As a result, Abbey's Motion No. 2 is GRANTED.

**C.    Motion 3:** *Undisclosed medical records and provider testimony*

Disposition: GRANTED

Abbey argues that Raugust should not be permitted to use medical records or present expert testimony that was not properly disclosed under Rule 26 of the Federal Rules of Civil Procedure, which states:

> *Witnesses Who Do Not Provide a Written Report:* Unless otherwise stipulated or ordered by the court, if a witness is not required to provide a written report, this disclosure must state:
> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

(ii) a summary of the facts and opinions to which the witness is expected to testify.

Here, Raugust's expert disclosure did not summarize the facts or opinions of his various providers, but rather lumped all 17 together, merely stating they would testify to the "nature, care, extent, treatment, and prognosis of Mr. Raugust's injuries, that such treatment and associated medical bills were reasonable, necessary and causally related to Mr. Raugust's wrongful incarceration." (Doc. 91-2 at 3.) In so doing, Raugust did not comply with Rule 26(a)(2)(C). Nor does he show his noncompliance was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). Accordingly, Abbey's Motion No. 3 is GRANTED and the testimony of Raugust's Rule 26(a)(2)(C) medical witnesses is excluded.

D.  **Motion 4:** *Abbey's prior conduct with the Billings Police Department*

Disposition: DENIED, subject to objection at trial

Abbey contends that evidence regarding his prior conduct while serving as an officer with Billings Police Department is inadmissible because it is prejudices his character. Abbey was terminated after being found to have been untruthful, specifically, Abbey lied and provided a false report about when his squad car was damaged. *See Abbey v. City of Billings Police Comm'n*, 886 P.2d 922 (Mont. 1994). He was consequently charged with four counts of violating the Billings Police Department directives, namely: "neglect of duty, misconduct in his office,

14

conduct unbecoming of a police officer, guilt of a crime and/or conduct such as to bring reproach upon the police force." *Id.* at 925.

Rule 404 and Rule 608 govern character evidence and addresses the admissibility of same. Although evidence of this nature is generally considered inadmissible, there are exceptions to the rule. Namely, Rule 404(b)(2) provides that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Given Abbey's prior dishonesty, evidence of the same would be admissible to prove "absence of mistake or lack of accident." Such evidence is limited, however, by the strictures of Rule 608.

Finally, Abbey argues that pursuant to Rule 403, this evidence must be excluded because its probative value is "substantially outweighed by a danger of unfair prejudice or confusing the issues." However, in the same way that evidence of Muir's conduct regarding the DOJ investigation into the handling of sexual assault cases by the Missoula Police Department is relevant as to his experience and credibility, Abbey's prior infractions during his time as a police officer in Billings also serves to illustrate his credibility as a police officer and his personal knowledge of the importance of complete and accurate reporting. Given that the bone of contention in this case is whether Abbey acted with deliberate indifference, it is reasonable to assess Abbey's previous conduct as a method of coming to a

15

more informed conclusion, and also as to what value to attribute to Abbey's testimony, given that he was previously found to have lied in his career as a police officer. Accordingly, Abbey's Motion No. 4 is DENIED subject to trial objection.

**E.      Motion 5:** *DOJ Investigation and Report.*

Disposition: DENIED, but reserve as to scope and specific use

*See* Raugust's Motion No. 4 for analysis.

**F.      Motion 6:** *"Golden Rule" arguments*

Disposition: GRANTED

A "Golden Rule" argument is when an attorney invites members of the jury to imagine they or their loved ones were the victim and to approach their judgment in this frame of mind, by offering a verdict that they would hope for in these circumstances. Abbey requests that any arguments of this nature be excluded at trial. In response, Raugust concedes the impropriety of such arguments in the context of compensation, but insists that "golden rule" limitations do not extend beyond that context. In *United States v. Palma*, the Eighth Circuit explained that a golden rule argument is "universally condemned because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." 473 F.3d 899, 902 (8th Cir. 2007) (quotation marks omitted). An argument of this nature, in effect, recommends to the jury that they attribute at least a portion of their verdict to their own personal preference if

they were in the position of the victim. This fundamentally strays from the role and purpose of juries which is highlighted in The Handbook For Trial Jurors Serving in the United States District Courts: "It is the jury's duty to decide the facts in accordance with the principles of law laid down in the judge's charge to the jury." As such, Abbey's Motion No. 6 is GRANTED.

### G. Motion 7: *Conclusions of Law*

Disposition: DENIED as MOOT

As decided in this Court's April 15, 2022 Opinion and Order, Judge Wheelis's 2015 Findings and Conclusions definitively establish the first two elements of Raugust's *Brady* claim: Abbey suppressed favorable evidence and that conduct harmed Raugust. (*See* Doc. 107 at 18.) The jury will therefore be instructed accordingly. As a result, Abbey's Motion No. 7 is DENIED as MOOT.

### CONCLUSION

Accordingly, IT IS ORDERED that the motions in limine (Docs. 65, 89) are GRANTED in PART and DENIED in PART as outlined above.

DATED this 10th day of May, 2022.

/s/ Donald W. Molloy
Donald W. Molloy, District Judge
United States District Court